## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA
#### (Civil Division)

LOUIS FITZIG                                )
    ██████████████              )
    ███████████                 )
                                )
       Plaintiff                   )

v.                                          )

Kirstjen M. Nielsen, Secretary              )
U.S. Department of Homeland Security        )
801 Nebraska Avenue, N.W.                    )
Washington, DC 20016                         )
                             )
       Defendant                   )

Case: 1:18−cv−02552    Jury Demand
Assigned To : Moss, Randolph D.
Assign. Date : 11/5/2018
Description: Employ. Discrim.   H Deck

**Jury Demanded**

### COMPLAINT

**COMES NOW** the Plaintiff Louis FItzig and files against the named Defendant, and for cause of action states as follows:

### INTRODUCTION

1. Plaintiff Louis Fitzig ("Plaintiff" or "Mr. Fitzig") brings this civil action pursuant to Title VII of the Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. δ 1981a; for relief from discrimination based on age ██████, race (Black), color (Mulatto), national origin (Semitic/Native American) and prior EEO activity.

2.  Defendant  Kirstjen M. Nielsen ("Defendant" or "Secretary Nielsen") is head of an Agency that discriminated against Plaintiff on the basis of his age, race, color, national origin, and prior EEO activity.

## JURISDICTION AND VENUE

3.  This Court has jurisdiction pursuant to Title VII, as amended, 42 U.S.C. §§ 2000e-16, 2000e-5(f)(1) and (3).  Further, this Court has jurisdiction over this Complaint because there is diversity of the parties and presents a question of federal law. 28 U.S.C. § 1331 (federal question) and 1332 (diversity).

4.  Venue properly lies within this Court pursuant to 28 U.S.C. § 1391 and 42 U.S.C § 2000e-5 (f)(3).  Secretary Nielsen is an officer of the Department of Homeland Security and oversees the United States Secret Service, both of which are headquartered in the District of Columbia.  Secretary Nielsen performs a significant amount of her official duties in the District of Columbia and resides, for the purpose of venue, within the District of Columbia.  *See, e.g., Bartman v. Cheney*, 827 F. Supp. 1 (D.D.C 1993) (holding that the Secretary of Defense resides in the District of Columbia for the purposes of  28 U.S.C. § 1391.

## PARTIES

5.  Plaintiff is currently domiciled at ██████████████████████████  At all relevant times, Plaintiff was an employee of the United States Secret Service.  Plaintiff is a resident of ████████████████ Virginia and a United States citizen.

6.  Secretary Nielsen is being sued in her official capacity as the Secretary for the United States Department of Homeland Security.

7.   Defendant is subject to suit for the negligent, discriminatory, wanton, willful or wrongful acts and/or omissions of employees or agents of Defendant; in addition, Defendant is the employer of persons (specifically identified, but not limited to, the Responsible Management Officials (RMOs): SAIC Frank Loveridge; ASAIC Brian Leary; ATSAIC Daniel Ciatti), whom have committed negligent, discriminatory acts and/or omission against Plaintiff within the course and scope of their employment.   Therefore, Defendant is liable pursuant to the doctrine of *Respondeat Superior*.

## EXHAUSTION OF REMEDIES

8.   Plaintiff has exhausted all of his administrative remedies.

9.   On or about August 11, 2017, Plaintiff timely contacted an EEO counselor and subsequently filed an informal complaint of discrimination based on age, race, color, national origin and prior EEO activity.

10.   After the Agency issued a Notice of Right to File, Plaintiff timely filed a formal EEO complaint, on or around September 22, 2017, complaining of the discriminatory non-selections for the positions at issue herein.

11.   Plaintiff was issued a notification of Right to Sue (Exhibit A).

12.   Certificate of Service, dated July 30, 2018, delivered on August 6, 2018 (Exhibit B).

13.   As 88 days have passed, since receiving notification of Right to Sue, Plaintiff now timely files this action pursuant to 29 C.F.R . δ 1641.408.

## FACTS

14.   Mr. Fitzig incorporates all information and allegations contained in the preceding paragraphs as if fully set forth herein.

15.   Mr. Fitzig has been employed by the United States Secret Service since March 1998.

16.   During his employment with the Secret Service, Mr. Fitzig has earned numerous performance based awards, positive comments on his performance appraisals, and high ratings on his performance evaluations in recognition of his abilities and contributions to the Agency.

17.   Since April 2008 – present, Mr. Fitzig has worked as a Phase III Special Agent, assigned to the Washington Field Office (WFO), as a GS-13 Criminal Investigator, under the Office of Investigations, Forensic Services Division, Polygraph Program.

18.   Prior to his Phase III assignment in the Forensic Services Division, Mr. Fitzig completed his Phase I assignment at the New York Field Office (NYFO), from March 1998 – August 2002, during which time he held the leadership responsibility as a designated Group Leader in the Bank Fraud Squad; he completed Phase II assignments on the Presidential Protective Division (PPD), from August 2002 – January 2007, and he completed a post-detail protective assignment in Special Operations Division/Airspace Program (SOD/ASB), from January 2007– December 2007, during which time he held the leadership responsibility as a designated WHIP.

19.   From April 26, 2013 to present, Mr. Fitzig has operated in the leadership capacity as the Backup of the Polygraph Unit, to the Assistant Special Agent in Charge (ASAIC) in the Office of Polygraph Operations, and successfully performed all of the duties and responsibilities related to the position which included his serving in the capacity as a Liaison between Polygraph

Operations at headquarters and WFO.  In his capacity of Backup/Senior Polygraph Examiner, Mr. Fitzig provided mentorship and guidance to a staff, ranging from two – four junior polygraph examiners, on a daily basis at the Washington Field Office.

20.  Despite Mr. Fitzig's seniority and superior performance within the FSD Polygraph program (corroborated by Agency records), he has been consistently marginalized and excluded from the equal opportunities for professional development afforded junior, less qualified White polygraph examiners.  In August 2016, Mr. Fitzig's Performance Evaluation was lowered from "Outstanding" to "Exceeded Expectations" in the area of Teamwork & Cooperation, by Mr. Ciatti, who justified this action based on alleged criteria that examiners need to be performing the collateral duty of Mentoring to receive an "Outstanding" rating.  However, it should be noted that Mr. Fitzig's evaluation was subsequently corrected, and Mr. Ciatti was replaced as Mr. Fitzig's Evaluator, after Mr. Fitzig appealed this biased evaluation on the basis of his disparate treatment after it was discovered that Mr. Ciatti had rated several junior White polygraph examiners (who were not Mentors) "Outstanding" in the area of Teamwork & Cooperation on their evaluations.

21.  Between April 2010 – November 2017, Mr. Fitzig submitted 122 bids for vacancy announcements, however, he was not selected for promotion despite his superior qualifications (performance, breadth of experience and variety of assignments) over those applicants selected for promotion.  The majority of those applicants selected for promotion, over Mr. Fitzig, were White.

22.  On or about August 2, 2012, the Agency issued a vacancy announcement, Number 12052, for two available Assistant to Special Agent in Charge (ATSAIC), GS-14 supervisor positions in the Office of Investigations, Forensic Services Division, Polygraph Operations.

23. Mr. Fitzig applied for these two vacant positions on or about August 15, 2012. Based on feedback received from several sources, Mr. Fitzig has reason to believe he was the best qualified applicant based on his breadth of experience, variety of assignments, and work performance specific to these positions. However, the Advisory Board (mostly White) and former Director Sullivan (White), as a matter of course, approved the recommendations to select T.C. J.K. (both White).

24. When the selections were announced on or around September 6, 2012, Mr. Fitzig learned that T.C. and J. K. were selected to fill these two open ATSAIC positions, despite the fact both applicants were less qualified and neither held current polygraph certifications at the time of their selections.

25. Mr. Fitzig has knowledge that subsequent to the aforementioned selections for Vacancy Number 12052, an EEO discrimination lawsuit (Case No.1:14-cv-01888) was filed by Edward Alston (Black) concerning his non-selection, despite his greater experience and current polygraph certification which neither T.C. nor J.K. possessed. A review of the court documents in that case reflects one of the chief arguments made by the Agency, in defending the selections of T.C. and J.K., was that both applicants held higher MPP scores/ranks.

26. On or about March 10, 2016, the Agency issued a vacancy announcement, Number 16033, for one available Assistant to Special Agent in Charge (ATSAIC), GS-14 supervisor position in the Office of Investigations, Forensic Services Division at the NCCA.

27. Mr. Fitzig applied for this vacant position on or about March 18, 2016 and with an MPP score of 84.12, he was nationally ranked 68 out of 837 employees.

28.  Of all the applicants, Mr. Fitzig has reason to believe he was the best qualified based on his breadth of experience, variety of assignments, and work performance specific to this position.  However, the Advisory Board (mostly White) and (then) Director Clancy (White), as a matter of course, approved the recommendation to select B.B.(White).

29.  Four days prior to the selection announcement, dated April 11, 2016, Mr. Fitzig learned that B.B. was favored to fill this ATSAIC position, due to his personal friendships with Mr. Leary and Mr. Ciatti (both White), which resulted in an obstruction of competition.

30.  On or about June 15, 2016, the Agency issued a vacancy announcement, Number 16095, for one available Assistant Special Agent in Charge (ASAIC), GS-14 supervisor position in the Office of Investigations, Forensic Services Division at the NCMEC.

31.  Mr. Fitzig applied for this vacant position on or about June 29, 2016 and with an MPP score of 84.12, he was nationally ranked 68 out of 837 employees.

32.  Of all the applicants, Mr. Fitzig has reason to believe that he was the best qualified for the position based on breadth of experience, variety of assignments and work performance. However, the Advisory Board (mostly White) and (then) Director Clancy (White), as a matter of course, approved the recommendation to select J.H. (White).

33.  Twenty-six days prior to the selection announcement, dated July 11, 2016, Mr. Fitzig learned that J.H. was favored for selection to fill this ASAIC position.  Mr. Fitzig has reason to believe that J.H. benefitted from an obstruction of competition as a result of her personal friendship with Mr. Loveridge (White).

34. On or about November 18, 2016, the Agency issued a vacancy announcement, Number 16169, for three available Assistant to the Special Agent in Charge (ATSAIC), GS-14 supervisor positions in the Office of Investigations, New York Field Office (NYFO).

35. Mr. Fitzig applied for these three vacant positions on or about November 30, 2016. Based on feedback received from several sources, Mr. Fitzig has reason to believe that he was the best qualified applicant based on his depth of experience, variety of assignments and MPP score/rank. However, the Advisory Board (mostly White) and (then) Director Clancy (White), as a matter of course, approved the recommendations to select C.A., B.G., and R.S. (all White).

36. When the selections were announced on or around December 16, 2016, Mr. Fitzig learned that C.A., B.G. and R.S. were selected to fill these three positions.

37. Five days after filing an informal EEO Complaint of discrimination against the Agency, for his non-selection regarding vacancy announcement Number 16169, Mr. Fitzig received a suspicious media contact on or about February 1, 2017 from The Washington Post on his official work email. This media contact concerned a salacious story involving the alleged sexual activities for promotion of two female Secret Service Agent Supervisors and the Director (at the time). After reporting this media contact to his supervisory chain-of-command, Mr. Fitzig was interrogated by Agency Inspectors and subsequently compelled to submit to a specific-issue polygraph exam (which he was informed he passed), administered by the FBI on February 6, 2017, to verify whether he was a media leak. It should be noted that Mr. Fitzig is aware of several other Agency employees, whom have received similar media contacts and they were not compelled to submit to polygraph exams, as he was, to verify whether they were media leaks. Mr. Fitzig has reason to believe he was the victim of a set-up, and the Agency used this media leak as pretext to

justify his disparate treatment of a compelled polygraph examination in retaliation for his prior EEO activity.

38. On March 15, 2017, all FSD polygraph examiners were notified that they were required (if available) to participate in an emergency conference call with Deputy Assistant Director (DAD) Breslin on same date. During this phone conference, examiners were informed by DAD Breslin that there was an impending Agency investigation regarding numerous employee complaints of FSD supervisory mismanagement. Mr. Breslin stated that "all FSD non-supervisory personnel are required to complete on-line surveys, which will be followed up with mandatory interviews with Inspectors from the Agency's Inspection Division, between March – April 2017." During Mr. Fitzig's interview on April 5, 2017, it became evident that ASAIC Lewis (a Black Program Manager) was being scapegoated for the mismanagement issues within the Polygraph Program based on the pretext that he lacked a polygraph background and certification. The Inspector who interviewed Mr. Fitzig was not interested in discussing Mr. Fitzig's allegations of prohibited personnel practices committed by several White supervisors within FSD. Subsequent to Mr. Fitzig's interview, he had conversations with several other polygraph examiners who shared with him their similar experiences and perceptions concerning Mr. Lewis being scapegoated for many of the mismanagement issues experienced by examiners within the Polygraph Program.

39. Between 2017 - present, the Plaintiff has witnessed the disproportionate increase in the numbers of resignations of non-white polygraph examiners from FSD, under the leadership of Mr. Loveridge, Mr. Leary and Mr. Ciatti. Plaintiff has reason to believe this disproportionate increase in numbers of resignations of non-white polygraph examiners is directly attributable to the disparate treatment experienced by these examiners, similar to that experienced by Mr. Fitzig.

40. On or about June 2, 2017, the Agency issued a vacancy announcement, Number 17116, for two available Technical Staff Assistant (TSA), GS-14, non-supervisory positions in the Office of Investigations, Forensic Services Division.

41. Mr. Fitzig applied for both of these vacant positions on or around June 6, 2017 and with an MPP score of 84.12, he was nationally ranked 81 out of 732 employees. He placed third, out of 14 candidates, on the Best Qualified List (BQL), for this vacancy announcement.

42. Of all the applicants, Mr. Fitzig was arguably the best qualified based on breadth of experience, variety of assignments, MPP score/rank, and work performance specific to these positions. However, the Advisory Board (mostly White) and Director Alles (White), as a matter of course, approved the recommendations for the selections of T.H. and T.K. (both White).

43. When the selections were announced on or around June 30, 2017, Mr. Fitzig learned that T.H. and T. K. were selected to fill the two open TSA/Senior Field Examiner positions. Mr. Fitzig has reason to believe that T.H. and T.K. both benefitted from an obstruction of competition as a result of their personal friendships with Mr. Loveridge.

44. It should be noted that T.H. was selected, with an MPP score of 82.92 and she was nationally ranked 135 out of 732 employees. She placed fifth out of 14 candidates, on the BQL, for this vacancy announcement. T.K. was also selected, and with an MPP score of 79.05, he was nationally ranked 367 out of 732 employees. He placed tenth out of 14 candidates, on the BQL, for this vacancy announcement. However, it should be further noted, that with just over one year of experience as a certified polygraph examiner at the time of his selection, T.K. did not meet the polygraph program eligibility requirements to hold such collateral duties as Quality Control

Review or Mentor; nor did he meet the program definition to be considered a "Senior Field Examiner" (which requires two years of experience and 200 exams).

45. On or about August 10, 2017, the Agency issued a vacancy announcement, Number 17157, for two available Technical Staff Assistant (TSA), GS-14, non-supervisory positions in the Office of Investigations, Forensic Services Division.

46. On August 11, 2017, after numerous requests for a meeting, Mr. Fitzig was granted the opportunity to meet with Mr. Loveridge to discuss his marginalization within the FSD/Polygraph program and his repeated non-selections for promotion. Mr. Loveridge advised Mr. Fitzig "one needs a Rabbi, a push-pull to be promoted. . ." .At one point, Mr. Fitzig made reference to the promotion of Edward Alston, a black polygraph examiner who similarly had been marginalized within the program and had been promoted via an Agency settlement of his EEO lawsuit regarding discrimination. Mr. Fitzig asked Mr. Loveridge "do I need to file a Formal EEO Complaint regarding my situation?" Mr. Loveridge advised Mr. Fitzig that he "should not file". Mr. Loveridge then shared with Mr. Fitzig his personal experience of being passed over for a reassignment by a younger individual and he then explained his decision to "not file an EEO Complaint of age discrimination because of the possible negative repercussions. . . there are elephants on the eighth floor". Based on Mr. Loveridge's aforementioned statements, Mr. Fitzig has reason to believe that he is not receiving "push-pulls" for promotion in retaliation for his EEO activity.

47. Mr. Fitzig applied for both of these vacant positions on or around August 15, 2017 and with an MPP score of 84.12, he was nationally ranked 81 out of 732 employees. He placed second, out of 11 candidates, on the Best Qualified List (BQL), for this vacancy announcement.

48.  Of all the applicants, Mr. Fitzig was arguably the best qualified based on breadth of experience, variety of assignments, MPP score/rank, and work performance specific to these positions. However, the Advisory Board (mostly White) and Director Alles (White), as a matter of course, approved the recommendations for the selections of N.H. and L.F. (both White).

49.  Thirty-three days prior to the selections announcement, dated September 13, 2017, Mr. Fitzig learned that N.H. and L.F. were favored for selections to fill these two open TSA/Senior Field Examiner positions.  Mr. Fitzig has reason to believe that N.H. and L.F. both benefitted from an obstruction of competition as a result of their personal friendships with Mr. Leary and Mr. Ciatti.

50.  It should be noted that N.H. was selected, with an MPP score of 79.36, and he was nationally ranked 356 out of 732 employees.  He placed fifth out of 11 candidates, on the BQL, for this vacancy announcement.  L.F. was also selected, and with an MPP score of 73.28, he was nationally ranked 638 out of 732 employees.  He placed eleventh out of 11 candidates, on the BQL, for this vacancy announcement.  L,F.'s MPP Score / Overall Rank was so low, that he did not meet the cut-off scores established for most of the vacancy announcements.  Plaintiff has further reason to believe that L.F. did not meet the cut-off scores established for any of the other vacancies he bid on.  Hence, opportunities for promotion for L.F. were limited to a few vacancies where there were not enough candidates for the Agency to establish cut-off scores (i.e. FSD / Polygraph), enabling his candidacy, where all bids could be considered.

51.  On or about August 10, 2017, the Agency issued a vacancy announcement, Number 17165, for one Assistant to Special Agent in Charge (ATSAIC), GS-14, supervisor position in the Office of Investigations, Forensic Services Division.

52. Mr. Fitzig applied for this position on or around August 15, 2017 and with an MPP score of 84.12, he was nationally ranked at 81 out of 732 employees.  He placed second, out of 9 candidates, on the Best Qualified List (BQL), for this vacancy announcement.

53. Of all the applicants, Mr. Fitzig was arguably the best qualified based on his breadth of experience, variety of assignments, MPP score/rank, and work performance specific to this position.  However, the Advisory Board (mostly White) and Director Alles (White), as a matter of course, approved the recommendation for the selection of E.R. (White).

54. Thirty-three days prior to the selections announcement, dated September 13, 2017, Mr. Fitzig learned that E.R. was favored for selection to fill this one open ATSAIC position. Mr. Fitzig further has knowledge that, five days prior to the selections announcement, E.R. had disclosed to several individuals that "DAD Breslin and AD Jenkins promised her she was getting promoted for the current open ATSAIC position in PolyOps and she was advised to not get into any trouble over the weekend prior to the official announcement".   Mr. Fitzig has reason to believe that E.R. benefitted from an obstruction of competition as a result of her personal friendships with Mr. Leary and Mr. Ciatti.

55. It should be noted that E.R. was selected, with an MPP score of 75.19, and she was nationally ranked 556 out of 732 employees.  She placed seventh out of 9 candidates, on the BQL, for this vacancy announcement.  It should further be noted that E.R. benefitted from the unfair advantage of a lateral reassignment to FSD PolyOps in March 2017, absent a Job Opportunity Announcement (JOA) and program solicitation, preventing other polygraph examiners the equal opportunity for consideration. E.R.'s MPP Score / Overall Rank was so low, that she did not meet the cut-off scores established for most of the vacancy announcements.  Mr. Fitzig has further

reason to believe that E.R. did not meet the cut-off scores established for any of the other vacancies she bid on.  Hence, opportunities for promotion for E.R. were limited to a few vacancies where there were not enough candidates for the Agency to establish cut-off scores (i.e. FSD / Polygraph), enabling her candidacy, where all bids could be considered.

56.  On or about November 2, 2017, the Agency issued a vacancy announcement, Number 17195, for two available Assistant to Special Agent in Charge (ATSAIC), GS-14, supervisor positions in the Office of Protective Operations, Special Operations Division / Airspace Branch.

57.  Mr. Fitzig applied for both of these vacant positions on or around November 9, 2017 and with an MPP score of 84.12, he was nationally ranked 81 out of 732 employees.  He placed third, out of 25 candidates, on the Best Qualified List (BQL), for this vacancy announcement.

58.  Of all the applicants, Mr. Fitzig was arguably the best qualified based on breadth of experience, variety of assignments, MPP score/rank, and work performance specific to these positions. However, the Advisory Board (mostly White) and Director Alles (White), as a matter of course, approved the recommendations for selection of L.C. and T.D. (both White).

59.  Fourteen days prior to the selections announcement regarding the two open ATSAIC positions in SOD/ASB, dated December 15, 2017, Mr. Fitzig learned that L.C. benefitted from an obstruction of competition as a result of an interview she had received from ASAIC of SOD/ASB, Don Douglas (White), on or about November 29, 2017, not afforded Mr. Fitzig.  Shortly after the selections announcement, Mr. Fitzig learned that T. D. also benefitted from an obstruction of competition as a result of his personal friendship with Mr. Douglas.

60. It should be noted that L.C. was selected, with an MPP score of 81.41, and she was nationally ranked 224 out of 732 employees. She placed twenty-third out of 31 candidates, on the BQL, for this vacancy announcement. Mr. Fitzig has knowledge, based on his conversation with L.C. on or about December 1, 2017, that Mr. Douglas had interviewed L.C. regarding the open ATSAIC position in SOD/ASB (on or about November 29, 2017), and this interview was witnessed by at least two other Special Agents. It should be further noted that during the aforementioned conversation between L.C. and Mr. Fitzig, she had stated she had zero airspace experience, nor completed any HARRIER or HUNTSMAN missions while she was assigned to the Presidential Protective Division. T.D. was also selected, and with an MPP score of 81.23, he was nationally ranked 238 out of 732 employees. He placed twenty-sixth out of 31 candidates, on the BQL, for this vacancy announcement.

61. On or about November 2, 2017, the Agency issued a vacancy announcement, Number 17209, for one available Assistant to Special Agent in Charge (ATSAIC), GS-14, supervisor position in the Office of Investigations, Newark Field Office.

62. Mr. Fitzig applied for this vacant position on or around November 9, 2017 and with an MPP score of 84.12, he was nationally ranked 81 out of 732 employees. He placed third, out of 25 candidates, on the Best Qualified List (BQL), for this vacancy announcement.

63. Of all the applicants, Mr. Fitzig was arguably the best qualified based on his breadth of experience, variety of assignments, and MPP score/rank. However, the Advisory Board (mostly White) and Director Alles (White), as a matter of course, approved the recommendation for the selection of M.F (White).

64. Eleven days prior to the selections announcement, dated December 15, 2017, Mr. Fitzig learned that M.F. was predetermined for selection to fill this open ATSAIC position. Mr. Fitzig has reason to believe that the personal friendship between M.F. and the SAIC of Newark Field Office, Mark McKevitt (White), presented an obstruction of competition.

65. It should be noted that M.F. was selected, with an MPP score of 78.76, and he was nationally ranked 378 out of 732 employees. He placed fourteenth out of 25 candidates, on the BQL, for this vacancy announcement.

66. Despite his dedication and wealth of experience, Mr. Fitzig continues to watch less qualified White agents be promoted ahead of him.

67. Upon information and belief, similarly situated employees of a different protected class are not subjected to the same foregoing hostile work environment and unlawful treatment.

## CAUSES OF ACTION

### COUNT ONE
### Title VII of the Civil Rights Act of 1964, as amended,
### 42 U.S.C. δ 2000e, et seq.
### (Employment Discrimination on the Basis of Race, Color, National Origin)

68. Plaintiff incorporated all information and allegations contained in the preceding paragraphs as if fully set forth herein.

69. Plaintiff was born ▓▓▓▓▓▓▓▓, is a Black, Mulatto, and Semitic/Native-American and has prior EEO Activity, and as such, is a member of several protected classes.

70.   As an employee of Defendant, Plaintiff was treated differently and subjected to different terms and conditions of employment in comparison to the White employees that Defendant employed.

71.   Defendant heads an Agency that has subjected Plaintiff to adverse employment actions, including the adverse actions alleged herein, and otherwise deprived Plaintiff of his rights enjoyed by his White coworkers.

72.   Agency's unlawful employment actions negatively impacted the terms, conditions and privileges of Plaintiff's employment because it resulted in loss of income, promotional opportunities and other disadvantages in the workplace.

73.   The reason(s) proffered for Agency's unlawful conduct are not legitimate and would be pretext for its discriminatory conduct.

74.   Plaintiff has been treated differently and subjected to different terms and conditions of his employment due to his age ██████████, race (Black), color (Mulatto), national origin (Semitic/Native-American) and prior EEO activity.

75.   Agency has limited, segregated and classified Plaintiff in a way that deprives him of employment opportunities and otherwise adversely affects his status as an employee because of his age, race, color, national origin, and prior EEO activity.

76.   Other employees, similarly situated, but members of a different protected class than Plaintiff, have been treated more favorably than Plaintiff in terms and conditions of employment.

77.   As a direct and proximate cause of Agency's conduct alleged in this Complaint, Plaintiff suffered, and continues to suffer, from harm, injury and monetary damages - including

but not limited to past and future loss of income, benefits, career opportunities, expenses and costs – and is entitled to all available legal and equitable remedies.

78.  Plaintiff was humiliated, embarrassed and made to endure a great amount of pain and suffering, and his injury is permanent in nature.  Further, Agency's treatment/actions are ongoing.

79.  Plaintiff has incurred lost wages, loss of reputation and loss of career opportunity now and into the future, and all of the other losses without Plaintiff contribution in any way thereto.

WHEREFORE, **Plaintiff** respectfully asks that this Honorable Court;

    a.  Award compensatory damages in excess of Two-Hundred and Fifty Thousand Dollars ($250,000.00);

    b.  Award lost wages;

    c.  Award medical costs/expenses incurred as result of Agency's unlawful conduct

    d.  Award reasonable attorney fees, costs, and expenses incurred for this action;

    e.  Order Agency to implement policies and procedure against discrimination;

    f.  Equal Employment Opportunity training for supervisory officials at issue;

    g.  Award equitable, declaratory, and injunctive relief;

    h.  Award such other and further relief as this Court deems just and proper.

## EQUITABLE RELIEF

80.  Plaintiff hereby incorporates, by reference hereto, the facts, law, and/or allegations contained within the preceding paragraphs, as fully set forth herein.

81.  Because of the actions alleged herein, the continued employment of the supervisors at issue herein without training in equal employment opportunity law, rules and regulations, present clear and present dangers to the employees of Defendant and could result in further illegal actions on the part of Defendant, by and through their respective agents, servants and employees.

WHEREFORE, Plaintiff respectfully asks that this Honorable Court:

    a.  Order Defendant to institute anti-discrimination policies and procedures;

    b.  Require supervisory officials complete appropriate EEO training;

    c.  Supervisory training for the supervisors at issue herein; and

    d.  Such other and further relief as this Court deems just and proper.

## JURY DEMAND

82.  Pursuant to Fed. R. Civ. P. 38, Plaintiff demands trial by jury on all issues so triable.

## CLOSING

Plaintiff agrees to provide the Clerk's Office with any changes to his address where case-related papers may be served.  He understands that his failure to keep a current address on file with the Clerk's Office may result in the dismissal of his case.

Respectfully submitted,

_____

Plaintiff:  Louis Fitzig

2 NN 2018

Date Signed by Plaintiff

# EXHIBIT A

Agency Case N. HS-USSS-02197-2017

In your appeal to EEOC, you must state the date and method (for example, by certified mail or hand delivery) by which a copy of the appeal was sent to the Director, Office of Equal Employment Opportunity, United States Secret Service. You should use the attached EEOC Form 573, Notice of Appeal/Petition, to file your appeal. The form may also be found at www.eeoc.gov/federal/directives/md-110_appendix.p.cfm. EEOC will dismiss your appeal if you do not file it within the time limits.

## FILING A CIVIL ACTION

You also have the right to file a civil action in an appropriate United States District Court within 90 days after you receive this final decision if you do not appeal to EEOC, or within 90 days after receipt of EEOC's final decision on appeal. You may also file a civil action after 180 days from the date of filing an appeal with EEOC if there has been no final decision by EEOC.

If your claim is based on age discrimination, the time limits noted above may not be applicable to you, especially if you are filing this civil action after giving EEOC not less than 30 days' notice of your intent to file such an action. Accordingly, you should consult an attorney if you desire further guidance regarding the timeliness of your case.

You must also comply with the following instructions:

(1) You must name Kirstjen M. Nielsen, Secretary, Department of Homeland Security, as the defendant. Failure to provide her name and official title may result in dismissal of your case.

(2) If you decide to file a civil action and if you do not have, or cannot afford, the services of an attorney, you may request that the Court appoint an attorney to represent you and that the Court permit you to file the action without payment of fees, costs, or other security. The grant or denial of the request is within the sole discretion of the Court. Filing a request for an attorney does not extend the time in which to file a civil action. Both the request and the civil action must be filed within 90 days of the date you receive the agency or EEOC final decision.

# EXHIBIT B

Agency Case N. HS-USSS-02197-2017

## CERTIFICATE OF SERVICE

For timeliness purposes, it shall be presumed that the parties received the foregoing on the date indicated below if sent via email or within five (5) calendar days after the date indicated below if sent by regular or certified mail. I certify that the foregoing final action, appeal rights, and appeal form were provided to the following:

Louis Fitzig

Zachary Ruetz, Esq.
Tully Rinckey, PLLC
400 Linden Oaks, Suite 110
Rochester, NY 14625
*(Via Certified Mail (7015 1520 0001 2539 1073), Return Receipt Requested)*

Director, Office of Equal Employment Opportunity
United States Secret Service
Communications Center/EEO
P.O. Box 6500
Springfield, VA 22150
*(Uploaded and Notified Via Email)*

_____          7/30/18
CRCL EEO Assistant                 _____
                                   Date

Agency Case N. HS-USSS-02197-2017

# USPS Tracking® FAQs   (https://www.usps.com/faqs/uspstracking-faqs.htm)

## Track Another Package +

**Tracking Number:** 70151520000125391073     Remove

Your item was delivered to an individual at the address at 10:57 am on August 6, 2018 in ROCHESTER, NY 14625.

### Delivered

August 6, 2018 at 10:57 am
Delivered, Left with Individual
ROCHESTER, NY 14625

Feedback

---

**Tracking History**

---

**Product Information**

---

See Less

## Can't find what you're looking for?

Go to our FAQs section to find answers to your tracking questions.

**FAQs (https://www.usps.com/faqs/uspstracking-faqs.htm)**